DECISION AND JUDGMENT ENTRY
{¶ 1} Gregory V. Dennison appeals his conviction for disorderly conduct, claiming it was not supported by sufficient evidence and it was against the manifest weight of the evidence. In both instances, he focuses upon his belief that he had an affirmative defense, i.e., defending a third party, Mark Griffith. The existence of an affirmative defense, does not factor into a sufficiency analysis because it is premised upon admitting the underlying conduct. It simply seeks to justify or excuse that conduct on the basis of a legal privilege. Accordingly, under a sufficiency analysis we simply review the record to see if the evidence, if believed, could support a finding of guilty beyond a reasonable doubt.
 {¶ 2} First, Dennison contends the state failed to prove he acted recklessly in hitting his neighbor, David Ludtman, with a piece of firewood while Ludtman and Griffith *Page 2 
were involved in an altercation. Because Dennison testified he intended to hit Ludtman in an effort to protect Griffith, i.e., he acted purposely, there is no question that Dennison acted with a sufficient mens rea to support a conviction for disorderly conduct, which only requires the misconduct to be done recklessly. Next, he contends the state failed to prove he caused inconvenience or harm to Ludtman. Because evidence indicates Ludtman suffered minor injuries to his back as the result of being struck by firewood, this argument is not persuasive. Finally, he argues "he was not involved in any violent or turbulent behavior" because he was defending his friend. The facts negate this assertion. All three men testified that Dennison struck Ludtman with the piece of wood.
 {¶ 3} In contesting his conviction on the basis of the weight of the evidence, Dennison asserts the trial court did not properly consider his defense of Griffith. The trial court specifically found Griffith was "a wrongdoer", i.e., was at fault in creating the disturbance by confronting Ludtman in an antagonistic manner. Because he was at fault, Griffith was not entitled to claim self-defense. Likewise, Dennison had no right to use force to defend Griffith because that privilege is based upon Griffith's right to do so, a right that did not exist under these facts. While there is conflicting evidence in this regard, we leave credibility determinations to the trier of fact.
 I. FACTS {¶ 4} Dennison and Ludtman are adjacent property owners, who by all accounts do not get along. Their mutual ill-will seems to originate from a dispute involving access to a driveway that "belongs" to Ludtman and over which Dennison claims an easement or "right of way." This dispute has been ongoing for some time and apparently *Page 3 
culminated in the fracas that caused Ludtman, Dennison and his guest, Griffith, to all be convicted of disorderly conduct.
 {¶ 5} Around 10:30 one spring evening, the Washington County Sheriff's Department responded to at least one call of a disturbance at Dennison's home. Deputy Rhodes was first to arrive and spoke initially with Ludtman, who claimed he was attacked after going onto Dennison's property to complain about a light that was shining onto his trailer. After briefly speaking with Ludtman, Deputy Rhodes went to Dennison's property where he found Dennison and his guest Griffith. Both men denied shining a light on Ludtman's trailer and indicated Ludtman confronted them, knocked Griffith to the ground and proceeded to beat him. After Griffith called for help, Dennison picked up a piece of firewood and hit Ludtman on the shoulder with it. Ludtman then struck Dennison in the head before Ludtman returned to his own property some 150 yards away.
 {¶ 6} Deputy Norman arrived at some point and conducted a lengthier interview of Ludtman, who admitted going onto Dennison's property to confront him about the light. Ludtman said as he approached the two men, Griffith acted belligerently by yelling and getting in Ludtman's face. Because Ludtman was concerned by Griffith's conduct, he pushed Griffith, who fell, and then started swinging and kicking Ludtman. After Griffith called for help, Dennison struck Ludtman with the firewood.
 {¶ 7} The officers charged all three with disorderly conduct. The trial court consolidated the three cases for a bench trial and found all three guilty after the evidence was similar to the facts we just described. *Page 4 
 II. ASSIGNMENTS OF ERROR {¶ 8} Dennison raises two assignments of error:
 FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT BY FINDING THE APPELLANT GUILTY OF DISORDERLY CONDUCT IN VIOLATION OF O.R.C. § 2917.11 (A)(1).
 SECOND ASSIGNMENT OF ERROR
 APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEREBY THE COURT DID [NOT] PROPERLY CONSIDER THE DEFENSE OF OTHERS.
 {¶ 9} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. See, e.g., State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 10} A sufficiency of the evidence challenge tests whether the state's case is legally adequate to satisfy the requirement that it contain prima facie evidence of all the elements of the charged offense. See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, andCarter v. Estell (CA 5, 1982), 691 F.2d 777, 778. It is a test of legal adequacy, rather than a test of rational persuasiveness.
 {¶ 11} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence *Page 5 
and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v.Martin, supra, at 175. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Johnson (1991), 58 Ohio St.3d 40,41, 567 N.E.2d 266; State v. Eskridge (1988), 38 Ohio St.3d 56,526 N.E.2d 304, paragraph two of the syllabus.
 III. SUFFICIENCY OF THE EVIDENCE {¶ 12} Dennison argues the state failed to introduce sufficient evidence of all the elements of disorderly conduct. R.C. 2917.11(A)(1) states:
 No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
 {¶ 13} First Dennison claims the state failed to introduce evidence that he acted with the requisite mental state, i.e., recklessly. This argument, like the other two under the first assignment of error, is based largely on Dennison's contention that he was privileged to act because he was defending a third person, i.e., his guest Mark Griffith. In this regard, Dennison confuses the question of the existence of his acts with whether they were privileged. As we stated recently inState v. Cooper, 170 Ohio App.3d 418, 867 N.E.2d 493, 2007-Ohio-1186, at ¶ 15, a sufficiency of the evidence argument cannot rely upon the existence of an affirmative defense. As we noted there, "[a] n affirmative *Page 6 
defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury. An affirmative defense involves an excuse or justification for doing an otherwise illegal act. See R.C.2901.05(C)(2). It does not deny the existence of the act; it simply provides a legal justification for it. Thus, the test for sufficiency of the evidence does not apply to affirmative defenses because the focus is solely upon the substantive elements of the charged offense — not the strength of the defendant's justification for his actions."
 {¶ 14} Here, all the evidence indicates Dennison hit Ludtman intentionally with the firewood. His motive for doing that act does not negate its existence. Likewise, his argument that he did not cause inconvenience, annoyance or alarm to Ludtman because his acts were justified is not persuasive. Ludtman testified he had injuries from being struck by the firewood. The deputies confirmed the existence of these injuries, however minor they turned out to be. And Dennison's contention that the state failed to introduce evidence he was involved in violent or turbulent behavior fails for the same reason. Once the state has satisfied its burden under Jackson, supra, it has satisfied the question of legal adequacy. Any question concerning relative persuasiveness must await a manifest weight of the evidence analysis. Id.
 IV. WEIGHT OF THE EVIDENCE {¶ 15} Initially, Dennison repeats his contention that the state failed to prove the mens rea element of recklessness, the element of inconvenience, annoyance or alarm by violent or turbulent behavior. We realize that the evidence may pass a sufficiency analysis and yet fail under a manifest weight of the evidence test. See, State v. *Page 7 Brooker, 170 Ohio App.3d 570, 868 N.E.2d 683, 2007-Ohio-588, ¶ 16, citing Thompkins, supra.
 {¶ 16} However, we conclude there is substantial evidence upon which the trier of fact could have concluded Dennison intentionally hit Ludtman with the firewood with the understanding that it would probably cause him some harm, discomfort or annoyance. Certainly, striking someone on the back with a piece of firewood can be described as violent or turbulent behavior.
 {¶ 17} More to the point, however, is Dennison's contention that the trial court improperly rejected his affirmative defense of coming to the defense of a third person. In reviewing that claim, we must keep in mind that credibility issues are best left to the trier of fact. State v.Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904, 2001-Ohio-1290;Brooker, supra, at ¶ 16.
 {¶ 18} Our analysis begins with the premise that self-defense is an affirmative defense and the burden of going forward with evidence to prove self-defense rests entirely on the accused. See R.C. 2901.05(A); also see State v. Palmer, 80 Ohio St.3d 543, 563, 687 N.E.2d 685, 703,1997-Ohio-312; State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, at the syllabus, affirmed in Martin v. Ohio (1987), 480 U.S. 228,107 S.Ct. 1098, 94 L.Ed.2d 267. To prove self-defense, the evidence must show that: (1) the accused was not at fault in creating the situation that gave rise to the affray; (2) the accused has a bona fide belief that he was in imminent danger of harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or to avoid the danger.State v. *Page 8 Williford (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, 1281;State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, at paragraph two of the syllabus.
 {¶ 19} As Dennison contends, a person has the privilege to use necessary force to defend others if, in good faith and upon reasonable grounds, that person believes that another is in imminent danger of death or serious bodily harm. State v. Marsh (1990), 71 Ohio App.3d 64,593 N.E.2d 35; State v. Sheets (1926), 115 Ohio St. 308, 152 N.E.2d 664;State v. Williford (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279; State v.Harris (1998), 129 Ohio App.3d 527, 718 N.E.2d 488. However, a person may use force only if the person that the accused aids had the right to use force. State v. Wenger (1979), 58 Ohio St.2d 336, 390 N.E.2d 801. Thus, the third party intervenor "stands in the shoes" of the person the intervenor aids. Id. Accordingly, one who uses force to intervene in a conflict on behalf of another may not invoke a privilege of self defense if the person defended was the aggressor in the conflict. Ellis v.State, 64 Ohio St.3d 391, 596 N.E.2d 428, 1992-Ohio-25.
 {¶ 20} Here there is conflicting testimony about whether Griffith was the aggressor. While Griffith and Dennison denied it, Ludtman contended Griffith approached him in such an antagonistic manner that Ludtman was concerned enough to push him away. Apparently, the trial court found him to have instigated the fracas because it labeled him a "wrongdoer." Thus, he was not entitled to claim self-defense, nor was Dennison entitled to the privilege afforded to those protecting third persons. While we might have chosen to believe the Dennison/Griffith version of events over that portrayed by Ludtman, it is not within our role to do so. Rather, we must defer to the fact finder where substantial evidence supports its choice. Ludtman's testimony *Page 9 
provides just such a basis for the trial court's conclusion. Accordingly, its judgment is not against the manifest weight of the evidence.[1]
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. Kline, J.: Concur in Judgment and Opinion
[1] While Dennison asserts he acted under a privilege, he limits this contention to the defense of others. He did not contend at trial that his conduct was privileged on the basis of ejectment of a trespasser. See, e.g., State v. Childers (1938), 133 Ohio St. 508, 516,14 N.E.2d 767; State Farm Fire Cas. Co. v. Totarella, Geauga App. No. 2002-G-2457, 2003-Ohio-5229, ¶ 26; State v. Preston, Butler App. No. CA 99-02-028, 1999 WL 740420; State v. Wardlow, Highland App. No. 98 CA 11,1999 WL 362905. Moreover, in the absence of any evidence that Dennison asked Ludtman to leave the premises before the fighting began that night, we doubt the defense of ejectment was available to him. *Page 1